Case No. 17-3631 Daniel Thomas et al. v. Nationwide Children's Hospital et al. Court ordered that the judge receive 15 minutes to explain it, 15 minutes to be shared by the defendants. Excuse me for a few minutes. Good afternoon, your honors, and may it please the court. I'm Ben Cooper, counsel for the families. Your honors, I think we can all agree that preventing child abuse is an important goal, but that we can't violate the Constitution to do it. And here, because there was state action, a warrantless search, and no Fourth Amendment exception, the defendants violated the Constitution. Now, in light of the court's most recent request, I'd like to turn and first address state action. The key question for state action is whether the conduct is fairly attributable to the state. Would you say the key thing that supports you in state action is the reporting requirement? Is that the thing that you focus on the most? Because they're obviously not traditional state actors, right? They're not paid by the state and all that stuff. Is the key thing the reporting requirement? It's not, your honor. Okay. What's key here is the purpose of these additional medical tests. And let me step back also and say what conduct that we're focused on here. The conduct that's at issue here are additional tests that are performed after the child has come into the hospital. So it's the kid comes in, for example. Well, who determines what tests have to be performed when you bring a child to a hospital? Parents don't. The physician does, right? Well, the parents do have the right to control the medical decisions making on behalf of their child. But they brought the child in for treatment. Yes, your honor. And they consented to these tests. They consented to they signed a general consent form, a medical general consent form. And on the state action side, our point is that conducting medical tests for the purpose of investigating crime for the state, it constitutes state action. But don't we first have to determine whether that's part of the standard of practice or not for a physician? I don't think so, your honor. Because if it is, you're out of court, right? That's right. That's right. We concede that there were medical purposes. Why else would they do it? Well, it's in part to investigate crime on behalf of the state, your honor. And the facts and the records. There's no crime reported to them. They weren't investigating it. It's what they saw of the patient that drove them to make the additional tests. That it was in part for a medical purpose, yes. But it was also in part for a law enforcement. But as long as it's in part as their standard of practice, you're out of court. Well, I don't think so, your honor. And here's why. I think that there should be no dispute. And I think if asked, my colleagues would concede that medical tests that are conducted solely for the purpose of investigating crime on behalf of the state clearly constitute state action. And our point here is that simply by adding an additional purpose, a medical purpose, that those analyses do not change. The tests that were state action, that were fairly attributable to the state. The thing, how about, I'm almost thinking of this in terms of causation. So forget intent for a while, which can be so slippery. I'm trying to figure out what state law changed the way the doctors interacted with these children. In other words, I could imagine a world where there's not a single criminal law enforcement. There's no reporting duty. There actually isn't even a criminal law prohibiting child abuse. Let's just say hypothetically, there's just no conceivable law enforcement connection to the tests. It seems irrefutable to me, on this record, the tests would have been conducted. So that disconnects the private entities from the state and from what happened. Well, respectfully, Your Honor, I disagree about that it disconnects that. Okay. I think we certainly would concede that. They would have performed these tests anyway, even if there was no law that prohibited child abuse and even if there were no reporting law. I think that's right, Your Honor, on this record. Okay. The issue is whether the conduct is fairly attributable to the state. I just took the state completely out of it. And in that circumstance, it would not be fairly attributable to the state. If the medical provider acted entirely independently of any law enforcement purpose. Doesn't the record here show that they conducted the tests for medical purposes? In part, Your Honor, but the record also shows and would allow a jury to conclude that there was also an investigative purpose. And it's from things like the signed agreements between the hospital and law enforcement, the county prosecutor, to collaborate for the investigation of child abuse. It's the statements from the hospital itself saying that these additional tests are mandated by state law. It's also the fact that when the hospital suspects child abuse, rather than immediately reporting it, they conduct the additional tests and then report that information to Children's Services. You just said that these exact tests were mandated by state law? That's what the hospital has said is that the investigation of child abuse was required by state law. That was the counsel for the hospital who sent a letter? That's where one of the statements comes from, Your Honor. Are there any other statements in the record besides that? There are, Your Honor. We cite them in our letter brief. It's the April 2015 letter and the May 2015 letter. That's on page three of our letter brief. That's where they say state law requires that we investigate all cases where there is any suspicion of abuse. We therefore follow a strict protocol. We've also pointed the court to that protocol, which says— Isn't that a question of law, though, not a question of fact, whether or not state law requires the investigation? It may be, Your Honor. So how can that be a fact that's relevant for summary judgment? Well, I think it speaks to the hospital's intent and why it's conducting these tests. And our point is that the constellation of these facts would permit a jury to reasonably conclude that one purpose of the test, at least one purpose of the test— But, I mean, it just seems so strange to me. The same thing is going on in every hospital throughout the state, probably the country, and you want to have a facts and circumstances test? One day they're liable, one day they're not, depending on the jury? Your Honor, that's— That seems incredibly odd to me. It's—well, for this court's purpose— So you think we should have the same rule for all these hospitals when it's the same state law that you say mandates it, the same state law that has the reporting, it goes to the same law enforcement? Shouldn't there be one rule for everyone? It—what the Supreme Court has told us, that in the state action context, it's factual dependent. It's dependent on the facts. And that's because the state can set up a number of different scenarios in which— But part of the problem—the reason I give back standard of practice is the state doesn't mandate tests unless they're called for. And the type of test can differ with patient to patient, right, depending on what the doctor suspects. So it's all a medical decision. Your Honor, it is in part a medical decision. But if he saw nothing, his medical decision would be, I can diagnose it on the basis of what I see. There's child abuse. And then what would he do? I'm sorry, I'm not— If he didn't have to do a test, if he could just look and say, there's child abuse, what would he do then? If there were no additional test presence, I can see that there would be no search that violated— All right, now he comes to the point where he sees all this physical evidence and he says, I think it's child abuse, but I'm going to confirm it or not confirm it. I'm going to do a test. But the test he decides on, whether to do a test, are all medical decisions, right? There's nothing—he doesn't go to a blackboard that the state has put out with a bunch of tests. They are uniquely the tests that he determines from his education and experience. And the key, Your Honor, is— Drew, am I correct? Yes, Your Honor. What could be more standard of practice? The key is why are those tests being performed? To save the child. They are being performed in part for— How about to save the child? Yes, Your Honor. That's the reason, isn't it? And that's the reason they brought the child in, was to take care of the physical being. And the reason he turned it in when he found child abuse is to take care of the child. And, Your Honor, we have no quarrel with—if the tests were done purely for a medical reason, then there would be no Fourth Amendment concern here. What else would it be done for? Well, it's to investigate crime on behalf of the state, Your Honor. But the crime is a medical crime, something that he sees that requires diagnosis. Well, the additional tests, the 20 additional x-rays, the brain CT scan, the blood work— They're not mandated by the state. There's nothing that says every child you come in, you must do these kinds of brain scans. He only does them if they're necessary in his medical judgment to take care of the child. Your Honor, we respectfully disagree that the record would allow a reasonable jury to conclude that one purpose— Another way to come at Judge Sirhan Ritz's question is, how would you design this system? You have to be of the view that it's okay when someone comes in and they present with something and that something could suggest there's even worse things. You have to agree that doctors are going to take care of that. So how should we design this system? Because I take it you agree we're not going to do a search warrant before every CT test, right? That would be pretty strange. So how do we design it? What do we fix here? Your Honor, I think there would be a very simple fix to this, and that's to include the investigatory purpose in the consent form that the family is signing. So all you have to do is say in that form each time, by the way, there's a reporting requirement and this goes off to the state? Not simply the reporting requirement, but that we have an investigatory purpose behind these tests in addition to our medical purpose. No, no, no. That's not fair. That's requiring them to say something they don't believe. They would perform the test without any investigatory purpose.  You're back with Judge Sirhan Ritz's concern. Your Honor, if it's the case, I agree, if it's the case that simply having one medical purpose inoculates the hospital from the Fourth Amendment... My problem with saying this fixes the problem, that when you sign up for consent you agree that the results can go to the state or law enforcement, everybody knows this. I mean, you know, we're all assumed to know the law. And this actually is one of the areas where that's not a fiction. Most people do know that if there's evidence of child abuse at a school, the school's going to report. Psychiatrists are going to report and hospitals are going to report. So I feel like this is not a problem. They already do know that's what's happening. Your Honor, I see my time is up. May I respond briefly? Yeah. We're not challenging the reporting requirement. We're challenging the additional test, the conduct. That's the search in this case. And if the court does find that there is state action here, there's no consent to those additional tests for the purpose of those tests, for the law enforcement purpose that's one of the purposes behind those tests. Okay. You get your full rebuttal. Thank you. Order. Your Honors, may it please this court, I'm William Porter and along with my colleagues, Angel Lissinsky and Martha Motley from the Voorhees Law Firm and co-counsel Steve Tigges. We represent Nationwide Children's Hospital and the three defendants in this case. I have 15 minutes, Your Honor, and I would like on behalf of Mr. Sulis of Franklin County Children's Services, he would like to reserve two minutes. Your Honors, I want to take a step back and Judge SirHeinrich, I think you got right to the point that there is an important concept that gets lost in the weeds in Plaintiff Appellant's case here, and that is that child abuse is, yes, indeed a crime, but it is also a medical diagnosis. It is a medical condition, just like a heart or a lung disease. And just like a heart or a lung disease, there are certain tests that are medically recommended in the independent medical judgment of the doctor who is treating the child, and those tests may or may not be administered. In this case, three tests were given to each of the three children based upon, again, the independent medical judgment of the attending physician for that child. They are not mandated by the state. There is no such mandate. But that's what he said. And how do you deal with the correspondence that he mentioned in which the counsel said it was mandated by the state? Those letters are by administrators. The issue here is whether or not there is a medical purpose for the tests in the diagnosis and treatment of the medical condition of child abuse. What those administrators said in that letter, which they testified to under oath, was dealt with or meant to address the mandatory reporting requirement and nothing more, nothing less. But the significance is that whatever they said, it's not dispositive. All that's dispositive for this court's determination to affirm Judge Sargas' summary judgment decision is that those folks who decided the purpose for these tests were the treating docs as affirmed by the three nationally recognized pediatric experts. He said the one thing that would fix this problem is a consent form, putting the intent issue to the side. And I accept that most people do know about these reporting duties. But if you've got these consent forms, God knows everyone is pretty well regulated in this area. What is the downside of explaining to perhaps some people who don't appreciate it that we're going to perform these tests and, by the way, if they reveal potential criminal problems, we have to report that to the prosecutor? Judge Sutton, one of the reasons is because there's no obligation to put that kind of information in the consent form. And this court has ruled on many, many occasions that we don't need to disclose all the reasons, all the motivations that may be involved in a search in order to give valid, voluntary, and free consent. I look to your own writings, Your Honor, in the U.S. v. Montgomery case where you talked about a lot of issues in that case, but one of which was that there was no reason, no legal reason for a policeman to have to disclose the true motive or purpose of the search in order to have valid consent. So that we don't need to add additional verbiage to the consent in order to be in compliance with the Fourth Amendment search and seizure as it relates to voluntary consent. You also, in U.S. v. Montgomery, discussed at length the concept of Miranda in the Fifth Amendment. And here, what plaintiff's appellants are attempting to have this court do is to say, look, you need to warn me in the consent form. You need to warn me that there's a possibility that the test results may be given to Children's Services or that I have the right to refuse. That is Miranda. That is not appropriate in the context of a Fourth Amendment search and seizure, which is their theory in this case. And it just, where do you end? Where do you stop when you're putting together a consent form? Not to be too skeptical, but you could imagine a reason for not including this is the fear that the parents won't consent to the test. And, you know, if I'm a hospital, that would bother me, right? Because I want the test done because I care about the patient and I could care less about law enforcement. But I do worry about it a little bit. That does suggest there is a law enforcement component to it, even though I don't think it would motivate a single doctor. Certainly in this case, Your Honor, the testimony is uncontroverted that the purposes, the necessity of the test were all medical in nature and driven by the medical standard of care. And so that the consent that was given in this case, which was for all things needed to medically treat, care, and diagnose these individual children, were signed off, were read, were testified to being thoroughly understood. Parents were there. Parents stayed with the kids. Parents were present during every single test that was administered. Never refused, never objected. If they had questions, they asked those questions. And if I could just speak just for a moment to the three tests that are involved here, because I think it might provide additional color to Your Honors. There are three tests that are involved. One is a blood test. And when these three children, one 6-month-old, one 12-weeks-old, and one 19-day-old, when they appeared and presented to the hospital, one of them had a single skull fracture. That was the 6-month-old. The 12-week-old had a broken femur, which is a leg bone, that could only be caused by violent torquing. And the 19-day-old kid had a broken fracture skull on each side of his head. In those instances, those doctors, in their independent medical judgment, decided to take a blood test to determine whether there was internal hemorrhaging, damage to the organs internally, which these most vulnerable of children who can't talk or walk, you need to do the test for that purpose. The CT scan, obvious for the kids with the broken skulls, but for the child with the broken leg, it's related in the experience of the doctors that often, where you have a femur fracture, there may be additional injuries, and you're looking for intracranial hemorrhaging. And then finally, the skeletal survey, which is the most controversial of the tests, that test is given in order to find if there are hidden injuries in these children who can't talk or walk. And I think the court should note, and it's in our brief, but it's a stunning statistic, which is that 18% of the time that a child under one year of age is suspected of child abuse, 18% of the time that skeletal survey will find additional hidden injuries. That's why those tests are given. There is nothing about investigatory purpose. It is all about the medical care and treatment of these children. In the Ferguson case, I don't know if you remember that case, the cracked baby case. I mean, you could say there, there was plenty of medical purpose, right? I mean, I can't think of anything more essential than looking after these fetuses. Ferguson is an interesting case, Your Honor. It's a case in which the hospital, which was a state hospital, so no question of state actor, they were a state hospital. They actually approached law enforcement and set up a practice by which these tests would be administered for the singular purpose of incrimination and arrest, which is nothing what we have here. I mean, there's no doubt law enforcement was more involved in that, but I have to believe they were motivated a little bit by looking after these babies. Well, there is some discussion of that in the case, Your Honor. But what Ferguson, its relevance to this case, since it didn't completely answer the consent issue and state action was not an issue because it was state action, was that the Supreme Court helped to delineate or differentiate between information that may be found through the medical treatment, inadvertently found through the medical treatment of a child, that that could be turned over to law enforcement, such as you might do, as was done in this case, pursuant to the mandatory reporting. So it makes that clear distinction between information found inadvertently through medical testing and that which information which is found through testing for the sole purpose of incrimination. Your Honors, just to go back to the consent issue and to wrap that up, what appellants are asking this court to do with respect to consent by trying to proclaim that the consent was involuntary, that there was some investigatory purpose involved, is to ask physicians to disclose information which the ordinary cop on the beat is not obligated to disclose under a Fourth Amendment search and seizure analysis. So that is not the law and should not be the law in this case. With respect to state action, there is no state action in this case because there is no investigatory purpose and there is no evidence of a state mandating the tests other than Your Honors' reference to those letters and I've addressed that issue. I think the court... Out of curiosity, do state hospitals do this differently? Or is your understanding, maybe you don't know and I certainly don't know, does this work the same way at a state hospital? I realize Nationwide is not a state hospital, so I got that point, but I'm just curious if it's the same regime in both places. Your Honor, I do not know the answer to that. What I do know the answer to is that in the leading private pediatric hospitals in the United States, they universally approach the issue of the diagnosis of child abuse the same way that Children's Hospital does, the doctors... Why would it be any different? I mean, I feel it's the physician has to make a standard of practice. I can't think of any reason that it would, Your Honor. I just simply... My knowledge is limited to a survey of virtually every leading pediatric hospital, private pediatric hospital, I just don't know. But I can't see why a doctor in a state hospital would approach this issue any differently than they do at Children's. Wrapping up on state action, Your Honors, if the court were to look, two places I think are helpful. One is U.S. v. Howard, which is a decision that this court decided in which an insurance... There was an arson, and police and an insurance agent engaged in an investigation of the house. The insurance, the suspect, claimed that the insurance agent in his investigation had engaged in state action since he was cooperating with the police. This court found that because there was an independent reason for the search other than criminal collection of information for criminal purposes, that the insurance agent was not a state actor. You can apply that law here, because under this record, there is clearly an independent reason other than any proposed or alleged state investigatory action, that being the sole purpose of these tests and the care and treatment was medical in nature. The Kiappi case we discussed at some length. The court may wish to take guidance from the Second Circuit, sister jurisdiction, in Kiappi v. McIntyre, which was a case involving a pediatric hospital where a child was kept in the hospital for seven days related to a methadone exposure. In that case, there was a declared... One reason they kept the kid, this baby, was because there was a policy at the hospital to keep children while there was a children's services investigation ongoing. So a clear investigatory purpose. The Second Circuit determined that because there was an independent medical reason for keeping the child in addition to the investigatory reason, that there was no state action. So Kiappi provides further guidance, if you will, if the court wished to look at it, in that we, in this circumstance, we obviously have independent medical reasons for the tests, the care, and the treatment of these three children and their siblings. I see that my time is up. Okay. Well, thank you. Thank you, Your Honor. Mr. Sulis. Thank you, Your Honors. May it please the court, Nick Sulis on behalf of Franklin County Children's Services. I speak today only to remind the court, as it pertains to my client, Franklin County Children's Services, I concede we're a state actor. You sound like it, don't you? There is no question there's state action on the part of Franklin County Children's Services in investigating allegations of child abuse. That is what we do. The important thing to point out, that on the record below, there is absolutely no dispute. Counsel for appellants clearly stated it. The Fourth Amendment violations here were the additional testing, the testing that was before. Maybe you know the answer to the question, do the public hospitals and private hospitals operate alike when it comes to these? I was hoping you had forgotten that question, Judge Slotin. I do not know the answer to that question. I see no reason, however, for the hospitals to act differently. I think Judge Schorheinrich is correct. As the record below was developed, the testing that was performed is part of the care and treatment of the child. The investigation is not performed, not in our jurisdiction. I'm not familiar with other jurisdictions. I do concede. But there is no reason for state hospitals to act any differently. While they may be considered state actors, it appears to me that the testing that was performed below was for the sole purpose of the care and treatment of the individual children. The mandatory reporting, which is the only state mandate in this case, individualized testing is not mandated by state law in this case. Only what the doctors, what the physicians deem to be the best possible care afforded to the children is what dictates their behavior. The record below is clear, however, that Franklin County Children's Services does not participate in the medical decisions in the care and treatment of the children. We had no role in that. All we do is step in after the fact and investigate these allegations. In the record below... You don't have any doctors on staff, right? No, that's correct. None that participate, I believe there are some nurses that are on staff, but they do not develop any protocol with respect to the care or treatment of any individual children. The only exception would be if Children's Services has actual legal custody of a child. In that instance, we will request and direct the medical care of that child that the agency has custody over, but that does not apply to any of these three appellants. Thanks. Thank you. We appreciate it, Mr. Cooper. We have a few minutes of rebuttal here. Thank you, Judge. Just briefly on that last point. Can I ask? I'm trying to figure out what you want. If the doctor suspected some of these things and you say you shouldn't do those tests without consent, what would he do? Go to the parents and say, look, I think you fractured your children's skulls, I think you've busted their legs, but if I verify that, I've got to turn you over to the police. Do you want to do that? And they say no. Then these children go home? Is that what you're advocating? It would be reported to Children's Services, Your Honor. Well, no, he doesn't know that. He thinks that. And he's telling the parents that the only way I can verify it is these tests. I believe the statute requires, as soon as there's a suspicion of child abuse, that that suspicion is reported. He's obviously posing a question where you don't hit that threshold, and you only hit that threshold with the more tests. Well, if that is the case, if there is no suspicion of child abuse that would trigger the statute, and the parents decided to not have their child treated at the hospital, then that is the parent's right to make medical care decisions on behalf of their children. And with respect to the notion of whether simply having one medical purpose removes this case from state action, I think one of the worries about that is that it would seem to undermine, for example, the Supreme Court's case in West v. Atkins. In that case, it said that a doctor, a private physician who is providing medical care to prisoners on behalf of the state, is still a state actor. That's even though they're exercising independent medical judgment. But that's why I want to get away from purpose. I think the best way to think about these cases is causation. And that's why I asked you that question at the outset. Would these tests have been done without any state child abuse laws, without any reporting requirements, without any conceivable law investigative purpose? And I think this record says they would have been done, no matter what the law is on this. And that would be a causation point, and that just solves our problem, because it's so hard to figure out what the purpose is when you often have two purposes,  On the causation point, Judge, from a 1983 claim standpoint, the causation point would be whether the actors caused a constitutional deprivation. State actors. State actor caused a constitutional deprivation. Through state law. That's right. I would say no if private medical people were doing things they would have done without regard to a single state law. Well, and respectfully, Your Honor, if they are acting on behalf of the state, if they are state actors. But your if. That's the answer to the question you want. Well, I'm saying that the causation question comes as soon as we have a state actor. Once we have a state actor, that's when the causation question comes into being. And that question is, is this person who's a state actor causing a constitutional deprivation? I'm actually wondering if it's a way to answer the state actor question. You have some individuals who are not classic state actors, and I'm saying to myself, wait, the evidence is 100%. They would have done this without regard to a single state law. Doesn't that show they weren't doing this under the badge of state authority? That's what I'm trying to think. And I don't think so, Your Honor. I think as soon as there is an investigatory purpose, their conduct is fairly attributable to the state. And the only other thing I'd like to say on that is to point out something Your Honor had brought up about why these aren't included in the consent form. And we cite to this on page 15 of our brief. And there are internal e-mails from the hospital saying we're worried that if we tell parents about this, they can refuse the additional test. I think that's additional evidence. That's Judge Sir Heinrich's point. It cuts both ways. It does. It shows law enforcement, but it also shows a desire to help the kid. Yes, and as we said from the beginning, there's no doubt that preventing child abuse is important. We just think that whether state action in a warrantless search, we can't violate the Constitution to do it. And for those reasons, we'd ask this court to reverse the district court's opinion and remand the case. All right. Thanks to all four of you for your helpful briefs and oral argument. Thanks for answering our questions. We really appreciate it. The case will be submitted, and the clerk may call the next case.